IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

THOMAS HAMILL, et al.,
          Plaintiffs,

     v.

NORTH WILDWOOD CITY, et al,

          Defendants.

Civil Action
No. 10-6587 (JBS-KMW)

**OPINION**

APPEARANCES:

Anthony J. Brady, Jr., Esq.
1 Rose Ave.
P.O. Box 129
Maple Shade, NJ 08052
     Attorney for Plaintiffs Thomas Hamill and Gregory Lasky

Eric L. Harrison, Esq.
Methfessel & Werbel, PC
3 Ethel Road
Suite 300
Edison, NJ 08818-3102
     Attorney for Defendant North Wildwood City

**SIMANDLE**, Chief Judge:

I.   **INTRODUCTION**

     Plaintiffs Thomas Hamill and Gregory Lasky are disabled

individuals who use wheelchairs and who brought this action

against Defendant North Wildwood City ("North Wildwood") and

John Doe Defendants for violation of Plaintiffs' rights under

Title II of the Americans with Disabilities Act ("ADA"), 42

U.S.C. § 12132 and the Rehabilitation Act of 1973, 29 U.S.C. §§

791-794. They allege that certain sidewalks and curb cuts in

North Wildwood City violate these laws. The Court has original

jurisdiction pursuant to 28 U.S.C. § 1331. This matter comes before the Court on Defendant North Wildwood City's Motion for Summary Judgment as to Plaintiff Hamill [Docket Item 53] and its Motion for Summary Judgment as to Plaintiff Lasky [Docket Item 54]. The Court held oral argument on March 11, 2013. Essentially, Defendant North Wildwood asserts that Plaintiffs lack standing because they did not suffer injuries-in-fact and because there is no concrete risk of future injury. Defendant's motions will be denied because, construing all facts in the Plaintiffs' favor, Plaintiffs have shown that they suffered injuries when they visited North Wildwood and are likely to suffer injuries in the future.

## II.  FACTUAL BACKGROUND

Defendant North Wildwood City ("North Wildwood") is a municipality located in Cape May County, New Jersey. (1st Am. Compl. ¶ 4.) Plaintiffs allege that North Wildwood's facilities are not handicapped accessible and thus violate the ADA and the Rehabilitation Act. (1st Am. Compl. ¶ 12.) Plaintiffs demand nominal damages, injunctive relief, attorney fees, and costs of suit. (1st Am. Compl. ¶ 15.)

Plaintiff Thomas Hamill lives in Voorhees, New Jersey. (1st Am. Compl. at 1.) He is quadriplegic and uses a wheelchair. (1st Am. Compl. ¶ 2; Docket Item 53-3, Ex. B, Hamill Oct. 5, 2011

2

Dep. 14:22.) He is a member of Advocates For Disabled Americans ("AFDA"). (Hamill Oct. 5, 2011 Dep. 25:23-25.) He frequently visits the Jersey shore, including trips to North Wildwood on December 14, 2010, July 16, 2011, and October 22, 2011. (1st Am. Compl. ¶ 6.)

Plaintiff George Lasky lives in Broward County, Florida. (1st Am. Compl. at 1.) According to Google Maps, he lives 1,206 miles from North Wildwood. [Docket Item 54-3 at 10.] He is also disabled and uses a wheelchair. (1st Am. Compl. ¶ 3.) He visited North Wildwood on October 9, 2010, December 5, 2010, April 15, 2011, October 9, 2011, and July 16, 2011. (Lasky SOF ¶ 2.)

On their visits, Plaintiffs could not use North Wildwood's services and could not access its beaches because North Wildwood's facilities do not comply with ADA regulations. (1st Am. Compl. ¶ 7.)

When Hamill visited North Wildwood in December of 2010, his purpose "was checking out the boardwalk, the beach, and the streets . . . looking for areas that I would be able to access the beach, . . . areas where I'd be able to handcycle on the street, and looking for access to the boardwalk." (Hamill Oct. 5, 2011 Dep. 81:14-25.) He noticed that "there was an area of sand between the ramp and the boardwalk. So I wouldn't have been able to make it to the ramp." (Hamill Oct. 5, 2011 Dep. 86:3-5.) He made these observations from his van. (Hamill Oct. 5, 2011

3

Dep. 86:19-20.) He also noticed problematic curb cuts, such as "curb cuts to nowhere . . . going into grass area" and "really dangerous [curb cuts] because you could wind up with a couple of wheels off the ground." (Hamill Oct. 5, 2011 Dep. 92:25-93:10.) Hamill "wants to enjoy the streets, avenues, and sidewalks of North Wildwood for cycling but is unable to do so." (Docket Item 61, Hamill SOF ¶ 6.)

Hamill also visited North Wildwood on October 22, 2011 "to see if I could find any motels that were open during the off-season and I had a phone call from Mr. Lasky about some issues that he had seen. . . ." (Hamill May 7, 2012 Dep. 6:8-11.) He acknowledged that "one of the reasons" for the October 2011 visit was to address questions he had from his first deposition in this litigation. (Hamill May 7, 2012 Dep. 8:2-5.)

When Lasky visited North Wildwood in December of 2010, he was "going up and down the coast by Cape May and looking for places to rent." (Lasky Oct. 12, 2012 Dep. 6:11-12.) Like Hamill, Lasky also experienced difficulty with the curb cuts, and he had to use his wheelchair in the street. (Lasky Oct. 12, 2012 Dep. 16:1-6.) The curb cuts did not have a flat landing and "[t]he angle going up is beyond a safe traversing – a safe angle that I don't have a chance of flipping backwards." (Lasky Oct. 12, 2012 Dep. 17:6-14.) In addition, the only open bathroom was a port-a-potty with a three-inch gap. (Lasky Oct. 12, 2012 Dep.

4

61:1-3.) He also made return visits to "follow up more in depth
on . . . the new curb cuts, the parking, . . . whether it was
acceptable, whether it met code, and the bathrooms. . . ."
(Lasky Oct. 12, 2012 Dep. 46:13-17.)

Plaintiffs both intend to return to North Wildwood as
patrons and as testers. (1st Am. Compl. ¶ 13.) For example, when
they filed the initial Complaint [Docket Item 1], they alleged
an intention to return for the AFDA meeting in North Wildwood in
the summer of 2011. (Compl. ¶ 15.) Plaintiffs attended the AFDA
meeting in North Wildwood on July 16, 2011 and, when the First
Amended Complaint was filed on February 15, 2012, they intended
to attend the next AFDA meeting in North Wildwood in the summer
of 2012. (1st Am. Compl. ¶ 13.)[1]

When Hamill was asked on May 7, 2012 whether he planned to
make more visits to North Wildwood, Hamill responded, "I don't
have any crystalized plans, more of a vague plan." (Docket Item
53-3, Ex. L, Hamill May 7, 2012 Dep. 4:22-25.) Hamill later
clarified that he "intends to return to North Wildwood as a
tester" because he believes that Defendant's attorney's "clients

---

[1]The 2012 AFDA meeting was postponed to October 27, 2012
partially because Lasky had a new child and did not want to
travel to New Jersey in the heat of the summer with an infant.
(Lasky SOF ¶ 5.) At oral argument, counsel advised that Lasky
came to New Jersey for the October 27th meeting but, due to
Hurricane Sandy that weekend, the meeting could not be held in
North Wildwood and was instead held in another New Jersey
location.

would not comply with the ADA unless ordered by a Judge."
(Hamill SOF ¶¶ 18-19.)[2]

When Lasky was asked about his plans to return to North
Wildwood, he said he had specific plans to return "but I don't
know exactly what date." (Docket Item 54-3, Ex. F, Lasky May 7,
2012 Dep. 18:2-4.) Lasky's purpose for future visits was "[t]o
continue to see about access, to enjoy what little parts of the
sidewalk that we can get to and we [the AFDA] hold our yearly
meeting and we're going to continue to hold it at Flip Flop[z]."[3]
(Lasky May 7, 2012 Dep. 18:5-10.) He plans to return to North
Wildwood with his family for "enjoyment." (Lasky Oct. 12, 2012

---

[2] Plaintiffs' counsel Anthony J. Brady, Jr. and North Wildwood's
counsel Eric L. Harrison have previously litigated cases against
each other and referenced this history in their briefing. For
example, Harrison noted other ADA cases in which Brady served as
counsel, Lasky and Hamill were plaintiffs, or North Wildwood was
the defendant. Brady's wife Albena Shutenko is a fact witness in
this litigation. Harrison made arguments based on "[p]rior
litigation experience with complaints filed by plaintiff's
counsel. . . ." (E.g., Def. Br. Supp. Mot. Summ. J. Against
Hamill at 13.) Harrison also argued, "Mr. Lasky is the Julius
Caesar of the AFDA [Advocates For Disabled Americans] – he
comes, he sees, and he sues (veni, vidi, egi) – and the City is
yet another victim of Mr. Brady's 'drive-by' litigation
business." (Def. Br. Supp. Mot. Summ. J. Against Lasky at 17.)
In the exhibits to Plaintiffs' Opposition Briefs, Brady attached
the transcript of a March 16, 2012 settlement conference before
Magistrate Judge Joel Schneider in Lasky v. Moorestown Township,
Civ. No. 09-5624 (RBK-JS). [Docket Item 60-9.] Judge Schneider
ordered defendant Moorestown's representatives to attend the
hearing because he was "concerned about the credibility of the
representation [he] was getting from Moorestown and its
lawyers." [Docket Item 60-9 at 2.] In assessing the pending
motions for summary judgment, the Court limited its analysis to
only the briefing and evidence offered in this particular case.
[3] Flip Flopz is a restaurant in North Wildwood.

Dep. 81:11-12.) He notes that North Wildwood "is a major tourist attraction." (Lasky SOF ¶ 14.) He also has "specific intent to return to North Wildwood to act as a tester" because the accessibility issues in North Wildwood are so problematic and "inconceivable." (Lasky SOF ¶ 16.)

Although he lives in Florida, Lasky visits New Jersey up to four times per year for his roles as President of the AFDA and guardian ad litem for a disabled man, who was involved in litigation in Camden, New Jersey. (Lasky SOF ¶¶ 7, 9.) In addition, he enjoys attending Philadelphia sporting events. (Lasky SOF ¶ 10.) His wife's best friend lives near Hightstown, New Jersey, and he enjoys the change of seasons in New Jersey. (Lasky SOF ¶ 12.)

### III. PROCEDURAL HISTORY

On October 24, 2011, the Court dismissed with prejudice [Docket Item 21] another Plaintiff, an organization called Advocates For Disabled Americans ("AFDA"), pursuant to a stipulation between the parties [Docket Item 19].

On February 14, 2012, this Court issued a memorandum opinion [Docket Item 38] addressing the motion of Plaintiff Karl Loose to withdraw his claims without prejudice [Docket Item 22] and the motion of Plaintiffs Hamill and Lasky to amend the complaint [Docket Item 23]. The Court permitted Loose to

7

withdraw his claims without prejudice and permitted Hamill and Lasky to withdraw without prejudice their claims under the New Jersey Law Against Discrimination, N.J. Stat. Ann. § 10:5-1. Plaintiffs Hamill and Lasky then filed a First Amended Complaint ("Amended Complaint"). [Docket Item 40.]

Defendant North Wildwood City filed a Motion for Summary Judgment as to Plaintiff Hamill [Docket Item 53] and a Motion for Summary Judgment as to Plaintiff Lasky [Docket Item 54]. Both motions argue that Plaintiffs lack constitutional standing to pursue their claims under the ADA.

North Wildwood argues that the Plaintiffs did not suffer any injuries-in-fact because they did not attempt to navigate the areas that they had determined, through visual inspections, to be inaccessible. In addition, North Wildwood argues that Plaintiffs lack concrete, specific plans to visit North Wildwood and avail themselves of North Wildwood's services and facilities in the future. If the Court declines to grant summary judgment, Defendant asks the Court to conduct a preliminary evidentiary hearing on standing. North Wildwood asserts that Plaintiffs' affidavits, which they submitted in support of the opposition to summary judgment, are sham affidavits. North Wildwood further argues that the affidavits cannot establish intent to return to North Wildwood because standing is based on conditions at the time of filing a complaint and, therefore, Plaintiffs must have

8

had the intent to return at the time they filed the initial
Complaint.


IV.   **STANDARD OF REVIEW**

Summary judgment is appropriate "if the movant shows that
there is no genuine dispute as to any material fact and the
movant is entitled to judgment as a matter of law." Fed. R. Civ.
P. 56(a). A dispute is "genuine" if "the evidence is such that a
reasonable jury could return a verdict for the non-moving
party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248
(1986). A fact is "material" only if it might affect the outcome
of the suit under the applicable rule of law. Id. Disputes over
irrelevant or unnecessary facts will not preclude a grant of
summary judgment. Id. The district court must "view the facts
and draw reasonable inferences in the light most favorable to
the party opposing the summary judgment motion." Scott v.
Harris, 550 U.S. 372, 378 (2007).


V.    **ANALYSIS**

Defendant contends that summary judgment is warranted,
because Plaintiffs lack standing to sue for injunctive relief
under the ADA. "Standing is a threshold jurisdictional
requirement. . . ." Pub. Interest Research Group, Inc. v.

<u>Magnesium Elektron, Inc.</u>, 123 F.3d 111, 117 (3d Cir. 1997).[4] The party invoking federal jurisdiction bears the burden of establishing standing "in the same way as any other matter on which the plaintiff bears the burden of proof, <u>i.e.</u>, with the matter and degree of evidence required at successive stages of the litigation." <u>Lujan v. Defenders of Wildlife</u>, 504 U.S. 555, 561 (1992). At the summary judgment stage, Plaintiffs cannot rest on mere allegations to establish standing, "but must 'set forth' by affidavit or other evidence, 'specific facts,' which for purposes of the summary judgment motion will be taken to be true." <u>Lujan</u> at 561 (citing Fed. R. Civ. P. 56(e)).

To establish constitutional standing, a plaintiff must prove the following elements:

> (1) [He] has suffered an "injury in fact" that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.

<u>Friends of the Earth, Inc. v. Laidlaw Envtl. Servs., Inc.</u>, 528 U.S. 167, 180–81 (2000); <u>see also</u> <u>Doe v. Nat'l Bd. of Med. Exam'rs</u>, 210 Fed. Appx. 157, 159 (3d Cir. 2006) ("<u>Doe II</u>").

---

[4] Standing doctrine embraces both constitutional and judicially self-imposed prudential limitations on who may invoke the power of the federal courts. <u>Allen v. Wright</u>, 468 U.S. 737, 751 (1984). Defendant has not challenged Plaintiffs' standing based on prudential considerations and, therefore, the Court has not analyzed this factor.

There is no dispute that North Wildwood's actions in terms of failing to make its facilities accessible caused Plaintiffs' alleged injuries. And there is no dispute that, if Plaintiffs obtained an injunction ordering North Wildwood to improve accessibility, then Plaintiffs' injuries would be redressed. The Court's analysis will therefore focus on the first element, i.e., injury-in-fact.

### A. Previous Injury

North Wildwood argues that Plaintiffs did not suffer any injuries when they visited North Wildwood. For example, Defendant emphasizes Lasky's "inexcusable failure to traverse a single curb cut. . . ." (Def. Br. Supp. Summ. J. Against Lasky at 17.) Defendant also argues that Hamill "never got out of his van . . . to physically traverse the areas he determined, solely by visual inspection, to be inaccessible." (Def. Br. Supp. Summ. J. Against Hamill at 9.)

The ADA does not "require a person with a disability to engage in a futile gesture . . .," if the disabled person has "actual notice" of a facility's non-compliance with the ADA. 42 U.S.C. § 12188(a)(1). Although the Third Circuit has not addressed the issue, other Circuits have held that while plaintiffs "need not engage in a 'futile gesture' of visiting a building containing known barriers that the owner has no

11

intention of remedying, see 42 U.S.C. § 12188(a)(1), they must

at least prove knowledge of the barriers and that they would

visit the building in the imminent future but for those

barriers." Access 4 All, Inc. v. Boardwalk Regency Corp., Civ.

No. 08-3817 (RMB), 2010 WL 4860565, *4 (D.N.J. Nov. 23, 2010)

(citing Steger v. Franco, Inc., 228 F.3d 889, 892 (8th Cir.

2000)).

Plaintiffs identified many problems with North Wildwood's

facilities. For example, they described "really dangerous [curb

cuts] because you could wind up with a couple of wheels off the

ground," (Hamill Oct. 5, 2011 Dep. 92:25-93:10), and "[t]he

angle going up [curb cuts] is beyond a safe traversing – a safe

angle that I don't have a chance of flipping backwards," (Lasky

Oct. 12, 2012 Dep. 17:6-14)[5]. The Court must view the facts in

_____

[5] To contradict Lasky's testimony that North Wildwood's curb cuts
were inaccessible, North Wildwood cites the testimony of Albena
Shutenko, who visited North Wildwood with Lasky. (Shutenko is
married to Plaintiffs' attorney Anthony Brady.) Shutenko
testified that Lasky "could use [the curb cuts]. He would just
have to be right in front of them." (Docket Item 54-3, Ex. Q,
Shutenko Oct. 7, 2011 Dep. 71:4-7.) North Wildwood argues that
Shutenko's testimony "[p]ut[] further strain on Mr. Lasky's
contention that the City's curb cuts were insurmountable." (Def.
Br. Supp. Summ. J. Against Lasky at 13.) But Shutenko also
testified that "the curb cuts were not done properly to me.
Technical issue," and that "[Lasky] was criticizing the curb
cuts. And I could see that he had a point." (Shutenko Oct. 7,
2011 Dep. 71:2-3, 23-24.) At this procedural posture, the Court
must construe facts in favor of the Plaintiffs; there is
adequate testimony in the record from Lasky and Shutenko to
establish that, at minimum, there is a disputed issue of

the light most favorable to the Plaintiffs. Plaintiffs have provided sufficient evidence to show, at this procedural posture, that North Wildwood's facilities are inaccessible and that they had actual notice, through their visual inspections, of inaccessibility. Plaintiffs need not engage in futile, and possibly unsafe, gestures to establish that they suffered an injury-in-fact when they visited North Wildwood.

### B. Future Injury

Plaintiffs seek injunctive relief and, because injunctions regulate future conduct, a party seeking prospective injunctive relief must demonstrate a real and immediate, i.e., not speculative, threat of future harm. City of Los Angeles v. Lyons, 461 U.S. 95, 111 (1983); see also Doe II at 159-60. "[I]ntentions to return to the source of the illegal conduct 'some day'—without any description of concrete plans, or indeed even any specification of when the some day will be—do not support a finding of the requisite actual or imminent injury." Dempsey v. Pistol Pete's Beef N Beer, LLC, Civ. No. 08-5454 (RBK-AMD), 2009 WL 3584597 at *4 (D.N.J. Oct. 26, 2009) (citing Lujan at 564, where affiant lacked standing to seek injunction protecting endangered animals, because she merely professed

---

material fact regarding the accessibility of North Wildwood's curb cuts and, thus, whether Lasky was injured by the curb cuts.

intent to "some day" return to observe them, but had no "concrete plans" to do so).

Thus, an ADA plaintiff "who seeks an injunction mandating removal of architectural barriers cannot 'manufacture standing' by simply claiming that [he] intends to return to the defendant's establishment." Access 4 All v. Boardwalk Regency Corp., at *4 (citing Kramer v. Midamco, 656 F.Supp.2d 740, 747-48 (N.D. Ohio 2009)). Courts assess a plaintiff's likelihood of returning in the imminent future (but for the barriers) by considering the following four factors: "(1) the plaintiff's proximity to the defendant's place of public accommodation; (2) the plaintiff's past patronage; (3) the definiteness of the plaintiff's plan to return; and (4) the plaintiff's frequency of nearby travel." Access 4 All v. Boardwalk Regency Corp., at *4; see also Cottrell v. Zagami, LLC, Civ. No. 08-3340 (JEI-AMD), 2009 WL 1416044, at *3 n.3 (D.N.J. May 20, 2009) (collecting cases in which constitutional standing analysis regarding intent to return was based on four factors listed above)). An analysis of these factors "sheds light on the question of whether the plaintiff is likely to return and thus whether the alleged discrimination has caused a sufficiently real and immediate injury to support standing for injunctive relief." Access 4 All v. Boardwalk Regency Corp., at *4.

### i.    Future Injury Analysis for Plaintiff Lasky

An analysis of the four factors shows that Lasky is likely to return to North Wildwood and, therefore, has standing to seek injunctive relief based on a non-speculative threat of future harm.

The first factor is the Plaintiff's proximity to the Defendant's establishment. Lasky lives 1,206 miles from North Wildwood. [Docket Item 54-3 at 10.] "Generally, when a plaintiff resides more than 100 miles from the defendant, courts conclude the likelihood of a plaintiff's return diminishes." Brown v. Showboat Atl. City Propco, LLC, CIV. No. 08-5145 (NLH), 2010 WL 5237855 (D.N.J. Dec. 16, 2010). The 100-mile distinction is not, however, determinative in this case: "a plaintiff's proximity to a defendant's establishment is not probative of intent to return when that establishment is a travel destination. . . ." Access 4 All v. Boardwalk Regency Corp., at *5.

Lasky pled that North Wildwood "is a major tourist attraction." (Lasky SOF ¶ 14.) Defendant argues that "[u]nlike businesses that cater specifically to travelers, such as hotels, City facilities cater predominantly to local residents." (Def. Br. Supp. Summ. J. Against Lasky at 15.) Defendant does not cite any case law supporting its contention that municipalities have less of an obligation to accommodate disabled travelers, as compared to local residents. Such a proposition is even more

15

dubious when advanced by a tourist resort, such as North Wildwood. Regardless, construing the facts in the light most favorable to the Plaintiff, Lasky has alleged that North Wildwood is a tourist destination and, thus, is not subject to the informal 100-mile rule. "Accordingly, the distance between [Lasky]'s residence and [North Wildwood] weighs neither for or against standing." See Access 4 All v. Boardwalk Regency Corp., at *5.[6]

The second factor is the Plaintiff's past patronage. Lasky visited North Wildwood on October 9, 2010, December 5, 2010, April 15, 2011, October 9, 2011, and July 16, 2011. (Lasky SOF ¶ 2.) This action was filed on December 16, 2010 and, therefore, at the time of filing the first Complaint, Lasky had visited North Wildwood twice.

Defendant emphasizes that the Court must assess standing at the time the Complaint was filed and must not consider efforts made after the filing of the Complaint. A plaintiff "must have set forth a definitive intent to return before filing his complaint in order to establish standing." Access 4 All, Inc. v. 539 Absecon Blvd., L.L.C., Civ. No. 05-5624 (FLW), 2006 WL 1804578, *4 (D.N.J. June 26, 2006). Lasky has satisfied this

---

[6] The Plaintiff in Access 4 All v. Boardwalk Regency Corp. resided only 125 miles from the defendants, which were casinos and hotels, but the tourist destination analysis is still instructive.

standard. When he filed the initial Complaint, he alleged an intention to return for the AFDA meeting in North Wildwood in the summer of 2011. (Compl. ¶ 15.) He did attend that meeting and, when the First Amended Complaint was filed on February 15, 2012, he intended to attend the next AFDA meeting in North Wildwood in 2012. (1st Am. Compl. ¶ 13.)[7] While post-complaint trips cannot establish standing, they "may still be relevant to the Court's assessment of Plaintiff's credibility" regarding future intent to return. Access 4 All v. Boardwalk Regency Corp., at *8. Lasky's visits since this litigation commenced bolster the credibility of his statements in his Complaint that he intended to return to North Wildwood as a visitor and a tester.

North Wildwood argues that Lasky "has no history of attempting to utilize City facilities or services for reasons other than the pursuit of litigation." (Def. Br. Supp. Summ. J. Against Lasky at 16.) Lasky states that his reasons for visiting North Wildwood included looking for vacation rentals for his family, attending the yearly AFDA meetings, and assessing accessibility problems. The Court must construe the facts in the light favorable to the Plaintiff, who has alleged multiple reasons for visiting North Wildwood. But, even if all of Lasky's

---

[7] As explained above, the meeting did not actually occur in North Wildwood because of Hurricane Sandy and, instead, took place at another location in New Jersey.

visits have been litigation-based, that fact would not negate the likelihood of future injury. "Indeed, because Plaintiff [] is a frequent litigant with the stated goal of ensuring ADA compliance, his claim of intent to return . . . to do additional examinations is made more, not less, credible." Access 4 All, Inc. v. Absecon Hospitality Corp., Civ. No. 04-6060 (JEI), 2006 WL 3109966, *7 (D.N.J. Oct. 30, 2006). The past patronage factor therefore weighs in Lasky's factor.

The third factor is the definiteness of Plaintiff's plans to return. "[A] plaintiff's mere assertion that he hopes to return at some later date falls short of establishing a real and immediate threat of future injury." Access 4 All v. Boardwalk Regency Corp., at *6. When Lasky was asked about his plans to return to North Wildwood, he said he had specific plans to return "but I don't know exactly what date." (Lasky May 7, 2012 Dep. 18:2-4.) His purpose for future visits was "[t]o continue to see about access, to enjoy what little parts of the sidewalk that we can get to and we [the AFDA] hold our yearly meeting and we're going to continue to hold it at Flip Flop[z]." (Lasky May 7, 2012 Dep. 18:5-10.) He also plans to return to North Wildwood with his family for "enjoyment." (Lasky Oct. 12, 2012 Dep. 81:11-12.) Lasky's reasons are far more than a "mere assertion that he hopes to return at some later date." In particular, the AFDA has held multiple meetings at Flip Flopz restaurant in

North Wildwood and plans to continue doing so. This factor weighs in Lasky's favor.

The fourth factor is the frequency of nearby travel. Lasky visits New Jersey up to four times per year for his roles as President of the AFDA and guardian ad litem for a disabled man, who was involved in litigation in Camden, New Jersey. (Lasky SOF ¶¶ 7, 9.) In addition, he enjoys attending Philadelphia sporting events. (Lasky SOF ¶ 10.) His wife's best friend lives near Hightstown, New Jersey, and he enjoys the change of seasons in New Jersey. (Lasky SOF ¶ 12.) This factor also weighs in Lasky's favor.

Essentially, three of the four factors indicate that Lasky has shown a likelihood of future injury. And the first factor, i.e., proximity, weighs neither for nor against Defendant because North Wildwood is a tourist destination. Defendant's motion for summary judgment as to Plaintiff Lasky is denied because Lasky has shown that he has constitutional standing.

### ii.  Future Injury Analysis for Plaintiff Hamill

Hamill easily satisfies the first factor, which is his proximity to Defendant's place of public accommodation. Hamill lives in Voorhees, New Jersey (1st Am. Compl. at 1), which is undoubtedly less than 100 miles from North Wildwood.

In terms of the second factor, i.e., past patronage, Hamill traveled to North Wildwood on December 14, 2010, July 16, 2011, and October 22, 2011. (1st Am. Compl. ¶ 6.) Hamill's first visit was two days before this action was filed, although his visits continued during the litigation. He admits that his visits have, in part, been fueled by this litigation. But, as discussed above, a plaintiff's interest in visiting for litigation purposes or as a tester weighs in his favor. The second factor weighs in Hamill's favor, although not strongly.

The third factor is the definiteness of the plaintiff's plans to return. When Hamill was asked on May 7, 2012 whether he planned to make more visits to North Wildwood, Hamill responded, "I don't have any crystalized plans, more of a vague plan." (Docket Item 53-3, Ex. L, Hamill May 7, 2012 Dep. 4:22-25.) Hamill "intends to return to North Wildwood as a tester" because he believes that Defendant's attorney's "clients would not comply with the ADA unless ordered by a Judge." (Hamill SOF ¶¶ 18-19.) He also intends to visit North Wildwood to attend AFDA conferences. (Hamill SOF ¶ 9.) And he "wants to enjoy the streets, avenues, and sidewalks of North Wildwood for cycling but is unable to do so." (Docket Item 61, Hamill SOF ¶ 6.)

Hamill's motivations are specific and definite. His previous attendance at AFDA meetings in North Wildwood lends credibility to his assertion that he plans to continue attending

them. Moreover, he has alleged that he cannot access the
boardwalk for hand-cycling; it would be incongruous for the
Court to require Hamill to specify dates when he plans to return
to hand-cycle when he cannot currently do so due to the alleged
barrier problems there. In <u>Access 4 All v. 539 Absecon Blvd.</u>,
the district court stated, "It is sufficient for a plaintiff to
allege that he has actual knowledge of architectural barriers
and that but for noncompliance with ADA provisions, he would
avail himself of the defendant's goods and services." <u>Access 4
All v. 539 Absecon Blvd.</u>, at *4. The district court made this
statement in the context of discussing the past patronage
factor, but its reasoning is also applicable to the definiteness
of plans to return analysis.

The fourth factor, <u>i.e.</u>, frequency of nearby travel, also
weighs in Hamill's favor, albeit not strongly. He alleged that
he frequently visits the Jersey shore, (1st Am. Compl. ¶ 6), but
he has not provided details about these other trips. Given
Hamill's general proximity to North Wildwood, however, this
factor also weighs in his favor.

Defendant's motion for summary judgment as to Plaintiff
Hamill is denied because Hamill has shown that he has
constitutional standing.

**C. Evidentiary Hearing**

Defendant also requests, if the Court finds that Plaintiffs' assertions in opposition to Defendants motions are more than sham affidavits, a pretrial evidentiary hearing on the standing issue. "A sham affidavit is a contradictory affidavit that indicates only that the affiant cannot maintain a consistent story or is willing to offer a statement solely for the purpose of defeating summary judgment." Jiminez v. All Am. Rathskeller, Inc., 503 F.3d 247, 253 (3d Cir. 2007).

Defendant argues that Plaintiffs' affidavits submitted in support of their opposition briefs are sham affidavits, but Defendant's argument lacks merit. (Docket Item 64, Def. Reply at 1-2.) Defendant argues that Lasky's affidavit states that "his wife's best friend lives in Hightstown, which he incorrectly describes as located in Middlesex rather than Mercer County. . . ." (Def. Reply at 2.) The location of Lasky's wife's friend is relevant to establish Lasky's connection to this area; Lasky's misidentification of the county does not foreclose his connection to this area and it certainly does not make his affidavit a sham. Defendant also notes that Lasky's affidavit states that he had "been going to North Wildwood since approximately 2008," but in response to interrogatories, Lasky stated, "Driving to Cape May since 2008 and have driven through North Wildwood. I do not remember the dates." (Def. Reply at 2.)

22

There is some inconsistency between the verbs "going to" and "driven through," but this inconsistency does not negate the other evidence in the record regarding Lasky's standing. "When there is independent evidence in the record to bolster an otherwise questionable affidavit, courts generally have refused to disregard the affidavit." Baer v. Chase, 392 F.3d 609, 625 (3d Cir. 2004). Moreover, "district courts cannot disregard an affidavit merely because it conflicts to some degree with an earlier deposition." Access 4 All v. Boardwalk Regency Corp., at *7. Defendant has not shown that Plaintiffs' affidavits are shams.

Given that Plaintiffs' affidavits are not shams and that Plaintiffs have established standing, at this procedural stage, the Court will not order an evidentiary hearing. "An evidentiary hearing is necessary to resolve questions of standing only when the Court cannot determine from the facts on record whether standing has been met." Brown v. Showboat Atl. City Propco, LLC, Civ. No. 08-5145 (NLH), 2010 WL 5237855, at 5 n.9 (D.N.J. Dec. 16, 2010). The record before the Court establishes, for summary judgment purposes, that standing has been met. There is no need for an evidentiary hearing.

## VI.  Conclusion

Defendant's motions for summary judgment will be denied because, construing all facts in the Plaintiffs' favor, Plaintiffs have established constitutional standing.


**March 11, 2013**                   **s/ Jerome B. Simandle**
Date                                 JEROME B. SIMANDLE
                                     Chief U.S. District Judge

24