IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

THOMAS HAMILL, et al.,

              Plaintiffs,

     v.

NORTH WILDWOOD CITY,

              Defendant.

HONORABLE JEROME B. SIMANDLE

Civil Action
No. 10-6587 (JBS/KMW)

**OPINION**

APPEARANCES:

Anthony J. Brady, Jr., Esq.
1 Rose Avenue
P.O. Box 129
Maple Shade, NJ 08052
    Attorney for Plaintiffs

Eric L. Harrison, Esq.
Methfessel & Werbel, PC
3 Ethel Road
Suite 300
PO Box 3012
Edison, NJ 08818-3012
    Attorney for Defendant

**SIMANDLE, Chief Judge:**

**I.   INTRODUCTION**

    Plaintiffs Thomas Hamill and Gregory Lasky are disabled individuals who use wheelchairs and who brought this action against Defendant North Wildwood City ("North Wildwood") for violating Title II of the Americans with Disabilities Act ("ADA"), the Rehabilitation Act, and the New Jersey Law Against

Discrimination ("NJLAD"). The Court has jurisdiction pursuant to 28 U.S.C. § 1331. The parties settled, and this matter now comes before the Court on Plaintiffs' motion for attorney's fees and costs [Docket Item 91]. Plaintiffs seek a total of $257,531.27, which includes 585.7 hours of attorney time at $400 per hour and $23,291.27 in expenses.

After making various subtractions for excessive billing, the Court concluded that Plaintiffs' counsel should be compensated for 477.1 hours of attorney time at $400 per hour. The lodestar is therefore $190,840.00. The Court will reduce the lodestar by 30% because the relief sought in the original Complaint was significantly broader than the relief received in the settlement agreement. Defendant shall pay Plaintiff's counsel $135,588.00 in attorney's fees. The Court will award $17,206.27 in costs.

## II.  BACKGROUND

### A. Procedural History

Plaintiffs Karl Loose, Thomas Hamill, Gregory Lasky, and Advocates for Disabled Americans ("AFDA") brought this action alleging that Defendant North Wildwood violated the ADA because certain beaches, bathrooms, curb cuts, and sidewalks were inaccessible to the disabled. [Docket Item 1.] They also sought damages, including punitive damages, under the NJLAD. Specifically, Plaintiffs alleged that newly constructed sand

dune ramps at JFK Blvd. were not accessible and did not provide handicapped-accessible access to the bathrooms at JFK Blvd.; that Defendant's curb cuts had excessive slopes, lacked a level landing, and had improper thresholds in large portions of six municipal streets, namely New York St., New Jersey St., Atlantic St., Central St., Surf Ave., and JFK Blvd.; and that the sidewalk on Surf Ave. had altered cross slopes. (Compl. ¶¶ 9, 11.) Plaintiffs claimed that, before filing their Complaint, they notified Defendant of these ADA violations by providing an expert report authored by William B. Cody. (Id. ¶ 7.)

On October 24, 2011, the Court dismissed Plaintiff AFDA with prejudice [Docket Item 21], pursuant to a stipulation between the parties [Docket Item 19].

On February 14, 2012, this Court issued a memorandum opinion [Docket Item 38] addressing the motion of Plaintiff Karl Loose to withdraw his claims without prejudice [Docket Item 22] and the motion of Plaintiffs Hamill and Lasky to amend the complaint [Docket Item 23]. The Court permitted Loose to withdraw his claims without prejudice and permitted Hamill and Lasky to withdraw without prejudice their NJLAD claims. Plaintiffs Hamill and Lasky then filed a First Amended Complaint ("Amended Complaint"). [Docket Item 40.]

Defendant North Wildwood City filed motions for summary judgment [Docket Item 53 & 54] asserting that Plaintiffs lacked

3

constitutional standing to pursue their ADA claims. The Court issued an Opinion and Order [Docket Items 68 & 69] denying Defendant's motions.

The parties filed a motion to approve their consent judgment [Docket Item 89], which the Court approved [Docket Item 90]. The parties' settlement agreement was attached to the Consent Order, and the Court retained jurisdiction to enforce its terms. The settlement agreement specified various ADA accessibility improvements[1], and noted that some improvements were contingent upon State approval or would be made "to the maximum extent feasible." [Id.]

The Court held oral argument on June 11, 2014 regarding Plaintiffs' motion for attorney's fees.

---

[1] The full list of improvements is: upgrading all curb cuts on JFK Blvd. between 2nd and 13th Aves.; upgrading all curb cuts on Surf Ave. between 10th and 18th Aves.; installing access mats between the bulkhead and the bicycle path at the intersections of JFK Blvd. and 7th and 10th Aves.; remedying the vertical threshold at the ramps at the intersections of JFK Blvd. and 7th and 10th Aves.; installing handrails on the ramps at JFK Blvd. and 7th and at JFK and 10th; placing a temporary, ADA-compliant bathroom near the accessible path off JFK; with respect to the permanent restrooms at the intersection of Pine and Old New Jersey, clearing the ramp, replacing door knobs with ADA-compliant door openers, lowering the urinal and the urinal flush valve, increasing the stall door width, moving the toilet paper, raising the toilet seat, replacing sink handles with ADA-compliant materials, insulating hot water and drain pipes, and mounting grab bars in the toilet stall; lowering the parking payment meters on the islands on Surf Ave.; relocating the garbage cans on the parking islands on Surf Ave. to accessible locations; and adding to beach maintenance a plan to eliminate sand accumulation at the paths. [Docket Item 90 at 2-4.]

**B. Parties' Arguments**

Plaintiffs assert that they are entitled to attorney's fees because they are the prevailing party. They seek a total of $257,531.27, which includes $23,291.27 in costs and 585.7 hours of attorney time at $400 per hour.

Plaintiffs' counsel, Anthony Brady, emphasizes that the ADA is complicated; that he is one of the few attorneys willing to undertake cases regarding access rights; that he is highly skilled and experienced; and that his fee award should not be reduced because he achieved outstanding success. Brady also explains his hours by asserting that "when I litigate against Attorney Harrison and the MEL I have to be extremely thorough knowing that misrepresentations of material fact and law to the Court will be made and many red herrings will be presented and that there will be a strong likelihood of an appeal." (Pl. Br. at 19.)

Defendant agrees that Plaintiff is entitled to reasonable attorney fees and costs, that Brady's rate should be $400 per hour, and that many of Brady's time entries were reasonable. Since there is no objection, the Court does not address the reasonableness of the $400 hourly rate. Defendant argues, however, that the Court should reduce Brady's total by subtracting 3.4 hours for a calculation error; 74.6 hours for excessive or unwarranted billing; 23.7 hours for Brady's

compilation of his time records in this case; and 3.4 hours for time entries relating to the dismissed Plaintiffs. At oral argument, Defendant's counsel also objected to the 18.5 hours that Plaintiffs' counsel submitted for working on the reply brief.

Defendant also argues that Brady's lodestar should be reduced by 50% because Plaintiffs achieved limited relief. For example, Defendant notes that Plaintiffs Loose and the AFDA were dismissed, Plaintiffs' NJLAD claims were dismissed, and the settlement agreement only calls for ADA-accessible improvements if feasible and approved by the State.

Finally, Defendant argues that the bill for Plaintiff's expert witness, William Cody, should be reduced because there is no explanation for $6,085.00 of the bill and because the Defendant should not be required to pay for transportation and lodging of a Florida-based expert who has not demonstrated such specialized expertise that a local accessibility expert will not suffice.[2]

---

[2] After oral argument, Plaintiffs submitted a letter [Docket Item 104] because "[d]uring oral argument North Wildwood relied heavy [sic] on that if he had only been informed of plaintiffs' demands the case could have resolved an early stage . . . . The undersign [sic] to create a complete record and because of this surprise respectfully request [sic] the Court to accept this short letter." [Docket Item 104 at 1.] Plaintiffs emphasized their willingness to settle and disputed Defendant's implication that they failed to provide settlement demands early in the litigation. The Court will not address arguments about which

## III. STANDARD OF REVIEW

Attorney's fees, expert fees and litigation costs are recoverable under the ADA. 42 U.S.C. § 12205. In order to recover attorney's fees the plaintiff must be a "prevailing party." Buckhannon Bd. and Care Home, Inc. v. West Virginia Dept. of Health, 532 U.S. 598 (2001). "[A] 'prevailing party' is one who has been awarded some relief by the court . . . ." Id. at 603. In addition to judgments on the merits, "settlement agreements enforced through a consent decree may serve as the basis for an award of attorney's fees." Id. at 604.

Under the ADA, "a 'lodestar' amount provides the starting point for determining reasonable attorney's fees." Lanni v. State of New Jersey, 259 F.3d 146, 149 (3d Cir. 2001). "The lodestar is obtained by multiplying the number of hours reasonably expended on the litigation by a reasonable hourly rate." Id. The lodestar "is the presumptively reasonable fee." Planned Parenthood of Cent. New Jersey v. Attorney General of the State of New Jersey, 297 F.3d 253, 265 n.5 (3d Cir. 2002).

"A plaintiff requesting attorney fees must provide evidence supporting the time claimed." Pub. Interest Research Group of N.J., Inc. v. Windall, 51 F.3d 1179, 1188 (3d Cir. 1995) ("PIRG v. Windall"). "The district court should review the time charged

_____

party facilitated or obstructed the settlement process because they do not impact the Court's analysis.

[and] decide whether the hours set out were reasonably expended for each of the particular purposes . . . ." Id. "[H]ours that are excessive, redundant, or otherwise unnecessary" should be excluded. Hensley v. Eckerhart, 461 U.S. 424, 434 (1983). "For work to be included in the calculation of reasonable attorneys' fees, the work must be useful and of a type ordinarily necessary to secure the final result obtained from the litigation." Planned Parenthood, 297 F.3d at 266 (quotation omitted). District courts must "consider a party's objections to particular time charges and make their findings on the hours that should be included in calculating the lodestar." PIRG v. Windall, 51 F.3d at 1189. "The court may not reduce an award sua sponte; rather, it can only do so in response to specific objections made by the opposing party." Interfaith Cmty. Org. v. Honeywell Int'l, Inc., 426 F.3d 694, 711 (3d Cir. 2005).

After the lodestar amount is calculated, a court has discretion to adjust the fee based on a number of different factors. PIRG v. Windall, 51 F.3d at 1185. The full list of factors is: (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill required to perform the legal service properly; (4) the preclusion of alternative employment; (5) the customary fee for similar work; (6) the nature of the fee payment arrangement; (7) time limitations imposed by the client or circumstances; (8) the amount involved

and results obtained; (9) the experience, reputation and ability
of the attorneys; (10) the "undesirability" of the case; (11)
the nature and length of the attorney-client relationship; and
(12) fee awards in similar cases. Id. at n.8. "The most
important factor in exercising this discretion is the 'results
obtained' by the plaintiff." Id. at 1185; see also Hensley, 461
U.S. at 436 ("the most critical factor is the degree of success
obtained").

"Where a plaintiff has obtained excellent results, his
attorney should recover a fully compensatory fee," and,
"[n]ormally this will encompass all hours reasonably expended on
the litigation . . . ." Hensley, 461 U.S. at 435. "If, on the
other hand, a plaintiff has achieved only partial or limited
success, the product of hours reasonably expended on the
litigation as a whole times a reasonable hourly rate may be an
excessive amount." Id. at 436. "A simple, mechanistic reduction
based solely on the ratio of successful to unsuccessful issues
is, however, precluded . . . ." PIRG v. Windall, 51 F.3d at
1190.

In addition, "legal services rendered in a dispute over the
attorneys' fees due a prevailing plaintiff are recoverable under
a fee shifting statute." Id. The lodestar and Hensley reduction
analysis applies to fees for preparing a fee petition. Maldonado
v. Houstoun, 256 F.3d 181, 188 (3d Cir. 2001).

IV.   **DISCUSSION**

Because the Court signed a consent judgment that
incorporated the parties' settlement agreement, Plaintiffs are
the prevailing parties and are thus entitled to recover their
fees and costs. Furthermore, Defendant stipulated that Brady's
rate should be $400 per hour, and this Court therefore does not
determine whether this hourly rate is reasonable for the nature
of the legal services rendered. The issues before the Court are
(1) the reasonableness of the hours and costs that Brady
submitted and (2) whether the lodestar should be reduced.

**A. Reducing Hours**

The Court will grant many of Defendant's proposed
reductions because Brady is only entitled to compensation for
hours that were reasonably expended.

**1. Reductions for Excessive or Unwarranted Billing**

The Court will reduce some of Brady's hours due to
excessive or unwarranted billing.  Below is a chart of line-item
reductions to Brady's billing due to excessive or unwarranted
time. This chart is based off a chart of objections that
Defendant compiled. At oral argument, the Court offered to
review each item line-by-line. Plaintiff's counsel demurred and
said that his primary concerns were reductions for time spent on
research and time spent traveling to North Wildwood to prepare
for depositions.

10

The Court will reduce time that Brady spent traveling to North Wildwood to examine the sites to prepare for depositions. At oral argument, Brady explained that he makes these trips to familiarize himself with the area because his client suffers from short-term memory loss. For example, he attested that, in describing a drive from Florida to New Jersey, his client may say that he traveled through Maine, instead of Maryland. The Court will permit travel and site visit time for these trips on October 1, 2011 and May 5, 2012. It is not unreasonable to require Defendant to compensate Brady for multiple trips to North Wildwood to prepare for depositions of a client who is impaired and has special needs. These extra measures to represent a client with short-term memory loss are "of a type ordinarily necessary to secure the final result obtained from the litigation." Planned Parenthood, 297 F.3d at 266 (quotation omitted), because a reasonably conscientious attorney would do so to assure a productive and accurate deposition.

The Court finds that some of Brady's billing for time spent conducting research must be reduced because the research was unduly protracted. Brady charges $400.00 per hour and is familiar with ADA litigation. Another court in this district has noted that "Plaintiff's counsel, by his own admission, has tried countless ADA-related cases . . . ." Lasky v. Moorestown Twp., Civ. 09-05624 (RBK/JS), 2013 WL 1222648, at *3 (D.N.J. Mar. 22,

2013). Given his high billing rate and his experience, Brady must be efficient with his time.

All objections by Defendant appear in the following table. The "Billed Amount" is the time claimed by Mr. Brady for the particular task, expressed in tenths of an hour. The entry for "Reduction" is the number of hours that the Court is subtracting by sustaining the particular objection, expressed in tenths of an hour.

**Table 1: Chart of reductions due to excessive or unwarranted billing:**

| Billing Date | Description | Billed Amount | Reduction | Court's Reason for Reduction |
|---|---|---|---|---|
| 12/6/10 | Review of email from attorney offering to meet only if Ed Law appears | .3 | .3 | Not Warranted – Ed Law was a plaintiff in another case. |
| 3/30/11 | Review case of Dis. In Action v. Southeastern | 1.5 | 1 | Excessive. |
| 3/31/11 | Review Scheduling Order | .3 | .2 | Excessive. |
| 3/31/11 | Review Minute Entry | .2 | .1 | Excessive. |
| 5/19/11 | Research and draft position letter to attorney Harrison | 1.9 | .5 | Excessive. |
| 7/7/11 | Review email about implied tax threat | .3 | .3 | Not Warranted – "Implied tax threats" have no bearing on the ADA claim |
| 7/7/11 | Tele to clients about implied tax threats | .5 | .5 | Not Warranted – Implied tax threats have no bearing on the ADA claim |
| 7/8/11 | Review discovery rules and tax privacy laws due to implied tax threat | 2.5 | 2.5 | Not Warranted – Implied tax threats have no bearing on the ADA claim |
| 7/14/11 | Review Scheduling Order | .3 | .2 | Excessive. |
| 7/14/11 | Review Text Order | .2 | .1 | Excessive. |
| 8/8/11 | Review discovery letter from defendant | .2 | .1 | Excessive. |
| 10/1/11 | Travel to site to prepare for depositions | 4.7 | 1.7 | Excessive. The Court will reduce the 4.7 hours to 3 hours because, as discussed at oral argument, travel |

| | | | | |
|---|---|---|---|---|
| | | | | round trip from Brady's office in Maple Shade to North Wildwood could reasonably take 3 hours. |
| 10/4/11 | Preparation for depositions including study of previous depositions and subject matter jurisdiction | 7.3 | 4 | Excessive – The first deposition taken in this case was not taken until October 5, 2011 and, therefore, there were no previous deposition transcripts to study. |
| 10/11/11 | Prepare travel and deposition | 3.5 | 1.5 | Excessive and Not Warranted – Presumably this entry relates to Mr. Lasky's continued deposition on 10/12/11. Brady was not taking this deposition and it would not require 3.5 hours to prepare for it. |
| 10/13/11 | Review deposition notice | .2 | .1 | Excessive to bill .2 for review of a deposition notice. |
| 10/17/11 | Review amended scheduling order | .3 | .2 | Excessive |
| 10/19/11 | Preparation for inspection | 4.1 | 3.1 | Excessive – Preparing for over 4 hours to inspect documents at a storage facility is excessive. |
| 11/13/11 | Travel to North Wildwood to prepare for inspection and review | 6.9 | 6.9 | Not Warranted – Brady was accompanied by his expert. Further preparation was not warranted. |
| 11/14/11 | Preparation for inspection | 1.4 | 1.4 | Not Warranted – Brady's expert accompanied him. Further preparation was not warranted. |
| 11/17/11 | Motion to amend | 2.5 | 1 | Excessive – This was a motion to amend and a motion to dismiss plaintiffs' NJLAD claims; the NJLAD claims should not be included as part of Brady's fee application. |
| 11/21/11 | Review response in opposition | 1.2 | .8 | Excessive – This motion also pertained to Plaintiffs' NJLAD claims, which should not be included as part of Brady's fee application. |
| 11/30/11 | Review text order | .2 | .1 | Excessive. |
| 12/6/11 | Review text order | .2 | .1 | Excessive. |
| 12/9/11 | Order granting Plaintiff's request for one day extension | .2 | .1 | Excessive. |
| 12/13/11 | Review reply brief to opposition to motion | 3.9 | 2 | Excessive – This reply brief dealt with plaintiffs' motion to amend and dismissal of the NJLAD claim, which should not be included. |
| 12/20/11 | Text order | .2 | .1 | Excessive |
| 12/21/11 | Review amended scheduling order | .3 | .2 | Excessive |

| 12/21/11 | Review Minute Entry | .2 | .1 | Excessive |
|---|---|---|---|---|
| 1/4/12 | Letter to defendant | .4 | .2 | Excessive |
| 2/14/12 | Review memorandum opinion | 1.1 | .8 | Excessive |
| 2/14/12 | Review order dismissing without prejudice | .2 | .1 | Excessive |
| 2/15/12 | Review amended complaint | .5 | .2 | Excessive – The amended complaint is merely 5 pages long. |
| 2/22/12 | Review answer | .8 | .4 | Excessive |
| 2/23/12 | Review amended scheduling order | .3 | .1 | Excessive |
| 3/29/12 | Review text order | .2 | .1 | Excessive |
| 4/4/12 | Review line by line expert report | 5.3 | 2 | Excessive – Goldstein's expert report was 32 pages long. The deduction would still allow review of approximately 10 pages per hour, which is more than reasonable. |
| 4/16/12 | Review minute entry | .2 | .1 | Excessive |
| 4/17/12 | Review amended scheduling order | .3 | .2 | Excessive |
| 4/24/12 | Review of deposition notice | .3 | .2 | Excessive |
| 5/5/12 | Drive to and review site to prep for depositions | 4.7 | 1.7 | Same reason as 10/1/11. |
| 6/7/12 | Review text order | .2 | .1 | Excessive |
| 7/16/12 | Review deadlines | .2 | .2 | Not Warranted – This entry was made twice on the same date. Even assuming it was for two different plaintiffs, at .4 it would be excessive; .2 would be more than reasonable. |
| 7/30/12 | Notice from Court | .2 | .2 | Not Warranted – This was the clerk's quality control message advising Brady to file a proper Rule 7.1 letter. This was an error on Brady's part and is, therefore, not reasonable. |
| 7/30/12 | Letter to Court | .2 | .2 | Not Warranted – As per the above entry, this was an error on Brady's part. |
| 8/4/12-8/20/12 | Research and writing | 53.7 | 15 | Excessive – It is not reasonable for an experienced attorney like Mr. Brady, who collects a $400/hr. fee, to take over 64.4 hours to research and write this opposition brief. A reduction of 23.7 hours is reasonable making the research, writing, review, and filing take a total of 40.7 hours including the 8/22/12 and 8/23 entries below. |

14

| 8/22/12 | Writing Brief | 6.9 | 6.9 | Excessive – See 8/4/12-8/20/12 comment above. |
|---|---|---|---|---|
| 8/23/12 | Review and filing of brief – Lasky | 1.6 | .8 | Excessive – See 8/4/12-8/20/12 comment above. |
| 8/23/12 | Review and filing of brief – Hamill | 2.2 | 1 | Excessive – See 8/4/12-8/20/12 comment above. |
| 8/24/12 | Exhibits – Hamill Work on | 1.2 | .5 | Excessive |
| 8/27/12 | Review defendants response brief | 1.2 | 1.2 | Not warranted - The only brief served on or about August 27, 2012 was defendants' reply letter brief. This brief was only 4 pages long and was billed for again on 8/29/12. |
| 8/29/12 | Review defendants brief | 4.6 | 3.6 | Excessive - See 8/27/12 comment. |
| 3/10/13 | Prepare for oral argument | 7.9 | 3 | Excessive – 4.9 hours is reasonable preparation for an experienced attorney like Mr. Brady who charges $400/hour. |
| 3/11/13 | Review order | .2 | .1 | Excessive |
| 3/14/13 | Review text order | .3 | .2 | Excessive |
| 3/18/13 | Review scheduling order | .2 | .1 | Excessive |
| 4/10/13 | Review order | .2 | .1 | Excessive |
| 5/1/13 | Review text order | .2 | .1 | Excessive |
| 5/10/13 | Review notice from court | .2 | .1 | Excessive |
| 6/27/13 | Preparation and telephone conference with Court | 1.8 | .4 | Excessive- The conference with the Court should have been billed at approximately .4 and preparation would not have required more than 1 hour. |
| 7/9/13 | Review clerks notice | .2 | .1 | Excessive |
| 7/16/13 | Email from ct. | 1.1 | 1 | Excessive – It is unlikely that Brady received an email from the Court which required 1.1 hours to review. This may have been a typo and should be reduced accordingly to .1 |
| 7/23/13 | Review minute entry | .2 | .1 | Excessive |
| 9/18/13 | Motion to approve | .8 | .3 | Excessive – This consisted of a one page consent order attaching an executed settlement agreement. |
| **TOTAL** | | | 70.6 Hours | |

The Court will therefore subtract 70.6 hours from Brady's proposed total for excessive or unwarranted billing.

### 2. Reduction of Time Spent on Attorney's Fees Motion

Defendant suggests subtracting 23.7 hours for Brady's work compiling his hours in this case. This reduction is reasonable.

Brady spent 44.3 hours preparing the fees motion, of which 23.7 were for "work on hours" or "adding hours" and 20.6 hours were for "work on motion." Billing 23.7 hours for compiling records is inappropriate. An attorney with Brady's experience should automatically keep records reflecting his hours and should be able to immediately retrieve those records without spending time compiling them.

Furthermore, this reduction is reasonable because Defendant has not challenged the 20.6 hours that Brady submitted for working on his fees motion. The Court compared the brief that Brady submitted in this case to the brief that he submitted in Lasky v. Moorestown Twp., Civ. 09-5624 (RBK/JS) (D.N.J. July 13, 2012), ECF # 105. Brady's brief in this case was 24 pages long and over 15 of those pages were identical to the fees-motion brief in the Moorestown case. Even typos were reproduced. The pages that were not identical were primarily excerpts from Plaintiffs' demand letter, excerpts from the settlement agreement, and references to the Moorestown court's opinion on the fee application. A reduction of 23.7 hours is reasonable.

Brady also submitted 18.5 hours for compiling his reply
brief and exhibits. At oral argument, Defendant's counsel
objected to this total, which was the only opportunity to do so.

Brady submitted .2 hours for drafting letters to the Court
requesting and confirming a brief extension on the due date for
his reply brief. [Docket Item 101-5 at 1.] Defendant should not
be required to compensate Brady for time spent seeking an
extension. Brady also submitted a total of 15.7 hours for "Work
on reply." [Id.] This amount is excessive. The reply consists of
a two-page certification from Brady, a second certification from
Brady that is four pages, and 2.5 pages of legal argument. The
Court will reduce the "work on reply" entry to one hour per
page, for a total of 8.5 hours. The Court will therefore
subtract 7.2 hours from Brady's time working on his reply for a
total reduction of 7.4 hours from time spent on the reply brief.

The Court's total reductions to Brady's hours are listed
below. This list includes a 3.5-hour calculation error that
Defendant identified and that Plaintiff did not challenge and
3.4 hours that Defendant identified that were spent on the
dismissed Plaintiffs.

| Nature of Reduction | Reduction |
|---|---|
| Calculation error that Defendant identified | 3.5 |
| Time entries relating to dismissed Plaintiffs Loose and the AFDA | 3.4 |
| Excessive or unwarranted billing | 70.6 |
| Compiling hours for fees motion | 23.7 |
| Reply brief | 7.4 |

| Total Reductions: | 108.6 |
|---|---|

The lodestar is therefore $190,840.00, representing 477.1 hours of attorney time at $400 per hour.

**B. Reducing the Lodestar**

Defendant argues that the lodestar should be reduced on the ground of limited success compared with the relief requested. Defendant points to the Supreme Court's precedent that a reduction is appropriate "if the relief, however significant, is limited in comparison to the scope of the litigation as a whole," Hensley v. Eckerhart, 461 U.S. at 440; see also Washington v. Philadelphia County Court of Common Pleas, 89 F. 3d 1031, 1042 (3d Cir. 1996) (comparing "[t]he amount of damages awarded, when compared with the amount of damages requested"). Defendant argues that in the present case, the named Plaintiffs were reduced from four (Hamill, Lasky, Loose, and the AFDA) to just two when the AFDA's claims were voluntarily dismissed on October 17, 2011 and Loose was permitted to withdraw his claims on February 14, 2002, and the NJLAD claim was likewise dismissed on that date. [Docket Item 39.] Defendant also argues that the Plaintiffs' claims for equitable relief in the Complaint sought improvements in access at numerous locations and facilities, many of which were not included in the final settlement and thus were unsuccessful claims that unreasonably inflate the lodestar.

The Court will reduce the lodestar, but not to the extent, i.e., 50%, that Defendant requested. The reduction will be 30%.

As discussed above, the most important factor to consider in adjusting the lodestar is the results obtained. In order to assess the results obtained, the Court must compare the relief Plaintiff sought with the relief in the settlement agreement. Comparing the relief requested to the relief received in the settlement agreement is challenging because there are multiple documents that contain Plaintiffs' criticisms of accessibility in North Wildwood. Throughout the litigation, Brady mounted a broad attack on accessibility shortcomings that he or his expert witness perceived throughout North Wildwood.

Plaintiffs argue that the appropriate comparison point is the demand letter that was submitted three years after the litigation began and that led to the settlement of the case. That demand letter contained substantially narrowed claims for access improvements that more closely resemble the final negotiated relief. The demand letter cannot be the lodestar-reduction comparator because it was submitted years after the litigation began. Plaintiffs seek fees for the first three years of litigation, not just the time after sending the demand letter. Defendant argues that the appropriate comparator is William Cody's expert reports. As discussed below, Cody's reports exceed the scope of this litigation and will be reduced,

but the Complaint made it clear that Plaintiffs were not
adopting all the criticisms contained in Cody's reports. The
Court will use Plaintiffs' Complaint as the comparator because
it represents the relief sought when this litigation began,
which is also approximately when Plaintiffs' counsel's billable
hours in this fee petition began.

Comparing the relief sought to the relief obtained is also
challenging because the terms of the Complaint, expert reports,
and settlement agreement do not match up easily. For example,
the settlement agreement includes a provision to lower parking
islands on Surf and relocate garbage cans on certain parking
islands to accessible locations, but neither the Complaint nor
any of the expert reports referenced the parking islands or the
garbage cans on Surf. On the other hand, the Complaint
references problematic slopes on the Surf sidewalks, but the
settlement agreement does not address sidewalk slopes. In order
to facilitate this challenging comparison, the Court created a
chart, provided below, of the problems identified in the expert
reports and the Complaint and of the relief received in the
settlement agreement.[3]

---

[3] At oral argument, counsel for Plaintiffs and for Defendant
represented that this chart accurately reflected the terms of
these different documents. No one challenged the comparisons
made.

**Table 2: Comparisons of Relief Sought and Obtained**

| William Cody Expert Report from Inspection on 04/23/10 *(provided before lawsuit filed)* | William Cody Expert Report from Re-Inspection in Summer *(year unspecified)* | William Cody Report from inspections in May and November 2011 | Complaint filed 12/16/10[4] | Settlement Agreement dated 09/16/13 |
|---|---|---|---|---|
| | | | general criticism of Defendant's beaches, bathrooms, curb cuts, and sidewalks, plus<br>• sand dune ramps at JFK not accessible and lack handicapped-accessible access to bathrooms<br>• curb cuts had excessive slopes, lacked a level landing, and had improper thresholds at New York, New Jersey, Atlantic, Central, Surf, and JFK<br>• sidewalk on Surf had altered cross slopes. | general provisions:<br>• upgrade all curb cuts on JFK between 2nd and 13th<br>• upgrade all curb cuts on Surf between 10th and 18th<br>• install temporary, ADA-compliant bathroom near the accessible path off JFK<br>• add to beach maintenance a plan to eliminate sand accumulation at the paths<br>• some improvements contingent upon State approval or will be made "to the maximum extent feasible" |
| | | | | lower parking islands on Surf and relocate garbage cans on the parking islands to accessible locations |

---

[4] The Amended Complaint, which was filed 02/25/12, had the same broad accessibility criticisms as the original Complaint and therefore is not repeated in this table.

| William Cody Expert Report from Inspection on <u>04/23/10</u> *(provided before lawsuit filed)* | William Cody Expert Report from Re-Inspection in Summer *(year unspecified)* | William Cody Report from inspections in <u>May and November 2011</u> | Complaint filed <u>12/16/10</u>[4] | Settlement Agreement dated <u>09/16/13</u> |
|---|---|---|---|---|
| 7th and JFK ramp <br> • 1-inch threshold <br> • improper slopes <br> • no handrail on right side <br> • no extensions of handrails | | same criticisms as 4/23/10 report | | at JFK and 7th <br> • install access mats between the bulkhead and the bicycle path <br> • remedy vertical threshold <br> • install handrails |
| 10th and JFK beach access improper slopes at ramp | 10th and JFK ramp <br> • improper slope <br> • no handrails <br> • threshold of 1-inch <br> • route from ramp to bike path is sand <br> • sand on ramp <br> • no extensions on handrails | same criticisms as 4/23/10 report | | at 10th and JFK <br> • install access mats between the bulkhead and the bicycle path <br> • remedy vertical threshold <br> • install handrails |

| William Cody Expert Report from Inspection on 04/23/10 (provided before lawsuit filed) | William Cody Expert Report from Re-Inspection in Summer (year unspecified) | William Cody Report from inspections in May and November 2011 | Complaint filed 12/16/10[4] | Settlement Agreement dated 09/16/13 |
|---|---|---|---|---|
| | | men's restroom at Old New Jersey and Pine <br> • ramp blocked, only stairs accessible <br> • round knob on bathroom door <br> • urinal height wrong <br> • urinal flush valve height wrong <br> • stall door too narrow <br> • toilet paper too far off back wall <br> • toilet too low <br> • sink handles wrong <br> • no insulation on sink pipes <br> • no grab bars in stall | | restrooms at the intersection of Pine and Old New Jersey <br> • clear the ramp <br> • replace door knobs with ADA-compliant door openers <br> • lower the urinal and the urinal flush valve <br> • increase the stall door width <br> • move the toilet paper <br> • raise the toilet seat <br> • replace sink handles with ADA-compliant materials <br> • insulate hot water and drain pipes <br> • mount grab bars in the toilet stall |
| parking lot at New Jersey at sea wall <br> • insufficient number of parking spaces <br> • problems with parking space slopes, access aisles, signage <br> • excessive slope at ramp to sea wall <br> • excessive slope on curb cuts leading to ramp | | same criticisms as 4/23/10 report | | None |

| William Cody Expert Report from Inspection on **04/23/10** *(provided before lawsuit filed)* | William Cody Expert Report from Re-Inspection in Summer *(year unspecified)* | William Cody Report from inspections in **May and November 2011** | Complaint filed **12/16/10[4]** | Settlement Agreement dated **09/16/13** |
|---|---|---|---|---|
| 3rd and JFK • problematic curb cuts | | same criticisms as 4/23/10 report | | None |
| 3rd and JFK ramp from sidewalk to gazebo • improper slope • no extensions on sides of ramp • no handrail | | same criticisms as 4/23/10 report | | None |
| 3rd and JFK ramp from gazebo to beach • improper slopes • no extensions on handrails • no mats | | same criticisms as 4/23/10 report | | None |
| 3rd and JFK telescope too high off ground | | same criticisms as 4/23/10 report | | None |
| | 7th and JFK ramp from restroom area to access route • improper slopes • no handrails • threshold goes into sand • path to bike path is sand • 1-inch threshold from sand to bike path • no extensions on handrails | | | None |

| William Cody Expert Report from Inspection on __04/23/10__ *(provided before lawsuit filed)* | William Cody Expert Report from Re-Inspection in Summer *(year unspecified)* | William Cody Report from inspections in __May and November 2011__ | Complaint filed __12/16/10__[4] | Settlement Agreement dated __09/16/13__ |
|---|---|---|---|---|
| | 7th and JFK restroom<br>• no bars in stall<br>• stall door opens wrong way<br>• stall door lacks self-closing mechanism<br>• flush valve on narrow side of stall<br>• urinal height wrong<br>• urinal flush valve wrong<br>• incorrect sink width<br>• no insulation of pipes under sink<br>• wrong knob on bathroom door | same criticisms as summer inspection report, plus<br>• mirror height wrong<br>• sink handles wrong<br>• sign height for restroom doorway wrong | | None |
| | Beach problems<br>• no access to lifeguard stands<br>• metal mat stops 150 ft short of highwater mark<br>• inaccessible port-a-johns with 8-inch step ups<br>• volleyball net on inaccessible sand path<br>• ramps at JFK and 16th-26th aves all too steep and lack extensions | similar criticisms of access ramps | | None |

| William Cody Expert Report from Inspection on <u>04/23/10</u> *(provided before lawsuit filed)* | William Cody Expert Report from Re-Inspection in Summer *(year unspecified)* | William Cody Report from inspections in <u>May and November 2011</u> | Complaint filed <u>12/16/10</u>[4] | Settlement Agreement dated <u>09/16/13</u> |
|---|---|---|---|---|
|  | list of slopes, thresholds, landings for intersections at Surf, Ocean, JFK, Atlantic, Central, and New Jersey |  |  | None |
|  |  | Restrooms at main parking area<br>• stall door too narrow<br>• toilet paper too far off back wall<br>• port-a-potty for times when regular restroom closed, but no ramp to access it and too small |  | None |
|  |  | ramp at 2nd and JFK improper slopes |  | None |

This chart shows that the relief provided in the settlement agreement is substantially narrower than the problems identified in the Complaint. For example, the Complaint identified problematic curb cuts on six streets, <u>i.e.</u>, New York, New Jersey, Atlantic, Central, Surf, and JFK. The relief in the settlement agreement is more limited: all curb cuts on JFK between 2nd and 13th and on Surf between 10th and 18th will be upgraded. In other words, only curb cuts on JFK and Surf at

26

certain intersections will be upgraded and no curb cuts on New York, New Jersey, Atlantic, or Central streets will be improved. In addition, although the Complaint mentions sidewalks generally and the Surf sidewalk specifically, the settlement agreement does not provide for improvements to sidewalks. The Complaint generally references accessibility violations with bathrooms, but the settlement agreement addresses only a temporary bathroom off JFK and permanent restrooms at the intersection of Pine and Old New Jersey. It is apparent that the problems identified in the Complaint and litigated in this case are substantially broader than the relief obtained in the settlement agreement. This demonstrates inefficiency in achieving the partial victory in the settlement agreement.

In addition, one of the factors to assess in adjusting the lodestar is the novelty or difficulty of the questions presented. While the Court does not dispute Plaintiffs' assertion that the ADA and federal procedural law generally are complicated, Plaintiffs' counsel litigates primarily ADA cases and has appeared in this District dozens of times in ADA cases. Moreover, as discussed supra, Plaintiffs' counsel was able to use briefing from other cases. That Mr. Brady should be able to handle cases regarding curb cuts, beach access, public restrooms and the like as a specialist in this field of law is reflected

in his very robust hourly rate. Actually, no novel questions have been identified in the present case.

In support of the argument that the lodestar should not be reduced, Plaintiff cites a similar case in which the court held that "[t]he fact that Plaintiff did not receive every line item requested in the litigation is endemic to the bargaining process in which parties engage while negotiating a settlement agreement." Lasky v. Moorestown Twp., Civ. 09-05624 (RBK/JS), 2013 WL 1222648, at *4 (D.N.J. Mar. 22, 2013). The Moorestown court noted that the plaintiffs had sought equitable relief, damages, attorney's fees and costs for the defendant's alleged non-compliance with the ADA and, in the settlement agreement, they received equitable relief, attorney's fees and costs. The Moorestown court held that "[t]his is not the sort of 'limited relief' that requires departure from the lodestar." Id.

While the bargaining process requires some compromise and the forms of relief obtained in this case are similar to the relief sought, some reduction of the lodestar is warranted here. There is no mathematical formula by which to arrive at a reduction for limited success. Hensley, 461 U.S. at 435-36. For example, if a plaintiff alleged six claims but prevailed on only one, it would be erroneous to compensate counsel for only one-sixth of the hours expended because some time had to be spent on the litigation as a whole and was necessary to the one

28

successful claim; the proper method is to estimate how much time would have been required if the plaintiffs had pursued only the successful claim. Ustrak v. Fairman, 851 F.2d 983, 989 (7th Cir. 1988); accord Schultz v. Hembree, 975 F.2d 572, 577 (9th Cir. 1992). When claims are factually or legally related, it is appropriate to examine the "overall results obtained" in determining whether the downward adjustment is appropriate.

In the present case, Plaintiffs brought a very broad set of claims addressing many streets and points of access and litigated them for fully 2.5 years before finally resolving the case as set forth above. The results of the negotiated settlement have produced meaningful improvements to access for the disabled, but on a significantly narrower scale that the relief that was sought. On the one hand, many of the same attorney services are needed whether the relief sought is narrow or broad, such as attending a scheduling conference; other services are increased due to the scope of the items at play, such as the lengthening of depositions and other discovery inherent in a larger suit. The Court has the distinct impression from this entire record that the case could have been fairly litigated and settled much earlier if Plaintiffs' counsel had focused earlier upon those items in its demand letter rather than seeking rather extravagant relief.

Further, at oral argument, Defendant's counsel emphasized
that Plaintiffs sought damages, including punitive damages,
under the NJLAD in their original Complaint and that these
claims impacted his approach to the litigation. The Court agrees
this is another factor counseling reduction of the lodestar
because a case seeking punitive damages is indeed apt to be
litigated more vigorously than one that seeks no damages.

Defendant's suggested reduction of 50% is still not
warranted, however, because Plaintiffs did obtain substantial
relief. Furthermore, the fact that Plaintiffs Loose and the AFDA
voluntarily withdrew as plaintiffs does not warrant a reduction
in the lodestar because the primary goal of the lawsuit was not
to obtain relief for specific plaintiffs but, instead, to obtain
accessibility for disabled persons in North Wildwood. Finally,
the Court rejects Defendant's argument that the lodestar should
be reduced because the settlement agreement specifies that
improvements will be contingent upon State approval or made to
the maximum extent feasible. These stipulations, in the Court's
opinion, reasonably reflect the reality of municipal
construction projects. Defendant North Wildwood's agreement to
make this long list of improvements "to the maximum extent
feasible" will be taken as North Wildwood's expression of good
faith that all items it agreed to are indeed feasible and are
not apt to be overturned by the State. Counsel agreed at oral

30

argument that all the agreed-upon improvements remain on target and none has been set aside by the State.

Accordingly, after weighing these various arguments and the specific relief obtained, the Court will reduce the lodestar of $190,840.00 by 30%. Brady's compensation will be $133,588.00. This represents the Court's best estimate of how much time was reasonably necessary to obtain the results achieved after taking into account the limited success achieved herein.

**C. Reducing the Expert Report Expenses**

The Court will grant Defendant's proposed reduction for Plaintiff's expert witness report. Plaintiff's expert witness, William Cody, charged a total of $18,435.00, including one week of hotel bills in North Wildwood, one week of car rental, and multiple different inspections. These costs are excessive.

Furthermore, as the chart above shows, the expert reports discuss myriad problems that were not raised in this litigation.

Defendant argues that Cody's fee should be $12,350.00 because Plaintiffs submitted a bill to Defendant that reflected billing through August 24, 2013 and that listed Cody's fee as $12,350.00. On July 23, 2013, the Court entered a 60-day order dismissing this case because the parties reported a settlement. Plaintiffs have not explained why Cody's fees increased after the case settled, and therefore the Court will subtract $6,085.00 from Cody's fee. This also represents a fair estimate

31

of the portion of his work that actually was useful in achieving

a favorable result in this case. There is no objection to any

other claimed costs.

Plaintiff requested a total of $23,291.27 in costs,

including Cody's expert report, and the Court will award

$17,206.27.

**V.    CONCLUSION**

Plaintiffs are entitled to reasonable attorney's fees and

expenses. After making various subtractions for excessive

billing, the Court concluded that Plaintiffs' counsel should be

compensated for 477.1 hours of attorney time at $400 per hour.

The lodestar is therefore $190,840.00. The Court will reduce the

lodestar by 30% because the relief sought in the original

Complaint, and litigated for many months, was substantially

broader than the relief received in the settlement agreement.

Defendant shall pay Plaintiff's counsel $133,588.00 in

attorney's fees. The Court will award $17,206.27 in costs.

An accompanying Order will be entered.

**June 23, 2014**               **s/ Jerome B. Simandle**
Date                            JEROME B. SIMANDLE
                                Chief U.S. District Judge